UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHERWYN TOPPIN MARKETING CONSULTANTS, INC.
d/b/a TEMPTATIONS TAVERN, and EWART BURTON,
individually,

                               Plaintiffs

    --Against--

CITY OF NEW YORK, and
JOHN DOES I through V, *individually*,[1]
SERGEANT MORRIS, individually,
CAPTAIN SARYIAN, individually,
ERIKA DONALDSON, individually,

                               Defendants
-----------------------------------------------------------X

COMPLAINT 08 1340

JURY TRIAL DEMANDED

KORMAN, J.

POHORELSKY, M.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ APR 0 1 2008 ★
BROOKLYN OFFICE

    Plaintiffs, SHERWYN TOPPIN MARKETING CONSULTANTS, INC. d/b/a TEMPTATIONS TAVERN, and EWART BURTON, individually, by their attorneys, LAW OFFICES OF AMBROSE WOTORSON, allege as follows:

I. <u>INTRODUCTION</u>

1.     This is an action to vindicate the civil rights of plaintiffs. Plaintiffs contends that defendants harassed and maliciously prosecuted them, falsely arrested and imprisoned them, maliciously abused criminal and civil process against them, violated their due process rights, violated their liberty interest rights, and maliciously violated their equal protection and commercial rights. These misdeeds are made actionable through 42 U.S.C. Section 1983, and these misdeeds are ongoing in nature.

II. <u>JURISDICTION</u>

2.     This Court has jurisdiction over this action under 42 U.S.C. Section 1983. Venue is proper, as the operative events occurred within this judicial district.

---

[1] The true identities of the numerous other law enforcement personnel who engaged in illegal acts against plaintiffs are unknown, and are therefore called John Does, I through IV, until they are identified.

1

III. PARTIES

3. SHERWYN TOPPIN MARKETING CONSULTANTS, INC. is a "person," and it is a privately-owned company that is incorporated in the State of New York. It may sue and be sued, and its principal place of business is located at 2210 Church Avenue in Brooklyn, New York, and at all relevant times, it operated TEMPTATIONS TAVERN, (hereinafter "the club") a cultural arts center located in Kings County, New York.

4. EWART BURTON, (hereinafter "plaintiff") who resides in Kings County, New York, hereby sues in on his own behalf. At all relevant times, plaintiff served as the general manager of SHERWYN TOPPIN MARKETING CONSULTANTS, INC., d/b/a TEMPTATIONS TAVERN.

5. CITY OF NEW YORK, (hereinafter, "municipal defendant") is a state actor for 42 U.S.C. Section 1983 purposes. Defendant may sue and be sued, and its principle place of business is in New York County, New York. At all relevant times, City of New York employed the individual defendants listed herein. They are sued for having violated plaintiffs' civil rights while acting under color of state law and/or acting pursuant to its own practices, customs and policies.

6. Defendants, "SERGEANT" MORRIS, individually; "CAPTAIN" SARYIAN, individually; "OFFICER" DONALSON, individually, and JOHN DOES I through V, individually, at all relevant times, were employed by the City of New York as inspectors, police officers, captains, and/or sergeants. However, they are herein sued in their individual capacities for violating plaintiffs' protected civil rights while acting under color of state law and/or acting pursuant to practices, customs and policies of the City of New York.

IV. FACTUAL AVERMENTS

7. Defendants violated plaintiffs' civil and commercial rights in the following ways:

a. Plaintiff has been the subject of numerous summonses, and the venue has been shut down or forced to close its doors on numerous occasions because of illegal police actions. This has negatively impacted upon plaintiffs' goodwill with the community. The aforementioned police actions have hurt plaintiffs' business as loyal patrons are now fearful of returning due to their expectation of prematurely ended celebrations.

b. Indeed, defendants forwarded summonses to the Supreme Court and the New York State Division of Alcohol and Beverage Control and filed nuisance charges plaintiffs, which were utterly bogus, resulting in a closure on June 13, 2005, with a resultant loss of revenue.

c. On March 27, 2005, Police Officer Charles Kee issued a ticket to plaintiffs for the consumption of alcohol after hours. The ticket was dismissed and the proceeding terminated in plaintiff's favor.

d. On February 11, 2006, Officer Jennifer Childs arrested and imprisoned plaintiff and one other staff member for the sale of alcohol after 4:00 a.m. The ticket was dismissed and the proceeding terminated in plaintiff's favor.

e. Burton sought out Council Member Yvette Clarke who scheduled a meeting at her district office on March 24, 2006, with the following parties, including plaintiff: Lieutenant Woods, and various other task force members of the Brooklyn Borough South Office; Detective Jones from the Police Commissioner's Office; Inspector Harris and other assistants from the 70th Precinct; Carolyn James Saunders from the Mayor's Office; Anita Taylor, the Chief of Staff for the

Council Member Clarke's District Office; and Ray Martin, the Chief of Staff for Council Member Letita James' Office.

f. Within a few hours after the meeting with the council members and other officials on March 24, 2006, Sergeant Morris threatened to close the establishment down. At about 4:00 a.m., Captain Saryian, Sergeant Morris and approximately thirty other officers, returned to the establishment and set up "roadblocks" on Church Avenue, Bedford Avenue and Flatbush Avenue. Subsequently, no cars were permitted entrance, and all patrons leaving the area in car or on foot were harassed. Plaintiffs recorded this harassment in its entirety on videotape. Moreover, such roadblocks, which were not sobriety checkpoints or vehicle safety inspection checkpoints, had the affect of alarming patrons. This process of setting up illegal roadblocks as a form of harassment is a specific practice and policy of the New York City Police Department and has been utilized on numerous occasions against similarly situated establishments.

g. In fact, on March 25, 2006, Officer Erika Donaldson issued three summonses for disorderly premises, unnecessary noise, and the sale of alcohol after 4:00 a.m. The tickets were dismissed and the proceeding terminated in plaintiff's favor.

h. The videotaping of the event on March 24, 2006 to March 25, 2006, shows police officers entering the premises; a ticket being written up for serving alcohol after 4am; and two officers stationed by the bar confirming with another officer that there was no alcohol being sold. When the staff member who was accused of serving alcoholic beverages after 4am asked why he was being issued a ticket, the officer replied, "Sir, you just heard me tell the other officer that drinks weren't being sold while the officers *were on* the premise." Then, the Manager explained

that there had been announcements that had been made periodically stating that the bar closes at 4:00am. The Captain stated that if anyone was seen after 4:30am drinking "*anything*", there would be summonses issued.

i. On May 4, 2006, Temptations Tavern was closed again, upon an utterly frivolous nuisance abatement action.

j. In fact, a Sergeant Morris was videotaped ordering officers to write bogus summonses which were ultimately used in closing Temptations Tavern down on May 4, 2006.

k. On July 20, 2006, an Inspector McClary of the New York City Fire Department conducted a "Place of Assembly" Inspection. The establishment passed the inspection. Inspector McClary then wrote a statement which he signed "PA Inspection Good to Go."

l. Yet, thereafter, on July 29, 2006, Temptations Taverns was visited by the New York City Police Department, the New York City Department of Health, the Department of Consumer Affairs, the New York State Liquor Authority, the New York City Environmental Control Board, the New York City Department of Buildings, the New York City Sheriff's Department and the New York City Marshall. These entities closed down the establishment for approximately two hours to conduct an "investigation." The so-called "investigation" was recorded in its entirely on videotape. Upon completing the investigation, Temptations Tavern received a total of three (3) violations: one from the State Liquor Authority, one from the New York City Environmental Control Board, and one from the New York City Department of Health. All of these citations were frivolous.

m. Indeed, Plaintiffs went to Court on September 18, 2006, and the violation from the New York Environment Control Board was dismissed. This ticket was dismissed and the proceeding terminated in plaintiff's favor.

n. On October 27, 2006, Inspector McClary returned to the establishment for a second "inspection." When Plaintiff asked why another inspection was occurring so soon after the previous inspection, which plaintiffs passed, McClary stated that he had received a call from the New York City Police Department requesting that he make another inspection of the premises.

o. Inspector McClary then issued two violations to the plaintiffs for failure to produce a record of monthly standpipe inspections; and failure to provide proof of a certificate of fitness for maintenance of the standpipe system.

p. On December 12, 2006, Hearing Officer, Patrick J. Sullivan found plaintiffs not guilty of these violations.

q. On February 23, 2007, Police Officer Nicholas Lagano issued two summonses for non-licensed security at the establishment. Yet, said security guards had valid security licenses at that time. Thus, these tickets were dismissed and the proceeding terminated in plaintiff's favor.

r. On March 10, 2007, Undercover Police Officer 824 allegedly witnesses the sale of alcohol during prohibited hours, allegedly recognized metal barriers in front of the entrance to the premises, and allegedly observed, along with other officers, the employment of unlicensed security guards, one of whom was allegedly in possession of a knife and an expandable baton. These tickets were dismissed and the corresponding proceedings terminated in plaintiffs' favor.

s. On March 28, 2007, an inspection was carried out at Temptations Tavern by the New York City Fire Department. Temptations Tavern passed this inspection. Yet, not three days later, on March 31, 2007, another inspection was carried out by the New York City Police Department, the New York City Fire Department, the New York City Department of Health and the New York City Department of Buildings. The same inspectors who were present at the March 28, 2007 inspection, also returned on March 31, 2007. When Burton asked why another inspection was occurring so soon after the previous inspection, he was told that the New York City Police Department requested that they do another inspection. Upon completing the investigation, Temptations received two (2) violations from the New York City Department of Buildings and two (2) violations from the New York City Police Department. These tickets were later dismissed and the proceedings terminated in plaintiffs' favor.

t. Again, on May 19, 2007, an Inspector returned to Temptations for another inspection. Plaintiffs received four violations. Immediately thereafter, a Notice and Order was issued from the New York City Department of Health, ordering the establishment to be closed without further notice, effective May 30, 2007.

u. On July 28, 2007, Police Officer Ivette Serano issued a summons for the warehousing and sale of alcohol without a license. Plaintiff Burton was arrested and imprisoned for this alleged violation. The ticket was dismissed and the proceeding terminated in plaintiff's favor.

v. Another method of harassment has taken the form of an arresting ritual of Burton, and Temptation Tavern's staff members and patrons. Indeed, to date, plaintiff has been arrested five times, along with five staff members and two patrons who were

7

falsely accused of being employees of Temptation Tavern. Each and every charge brought against Burton and Temptation Tavern's staff and patrons confused with staff has resulted in dismissal. These actions were undertaken for illegitimate purposes, and defendants maliciously abused the criminal process.

w. On or about 5:35 a.m. on January 6, 2008, officers from the 67th Precinct entered Temptation Tavern. The officers claimed that they were driving by and just wanted to know why the establishment was still open. The officers from the 67th Precinct said that maybe the 70th Precinct allowed plaintiffs to stay open, but any establishment under their jurisdiction (meaning the 67th precinct) knows that it must be closed by 4:00am. These officers stated that what plaintiffs were "getting away with," won't be happening any longer, and that the New York City Police Department would be coming by every weekend to make sure that Temptation Tavern was never opened past 4:00a.m.

x. Thereafter, these officers entered the establishment and proceeded to walk throughout the establishment. They walked directly to the DJ booth and turned on the lights and said that it was time that this club was closed.

y. During these harassing visits, Captain Jack Lewis later told Burton that he was responsible for closing nightclubs in his area and that plaintiff should "ask Mr. Crooks about that." Lewis also said that he would "see to it" that plaintiffs abided "by the law."

8. Upon information and belief, defendants have undertaken similar illegal actions against other establishments in Brooklyn that are primarily owned and operated by Black people and Black people from the Caribbean. In fact, the Brooklyn/Staten Island Vice Enforcement Squad in the month of July 2007, targeted restaurants, nightclubs, bars and social venues that

were overwhelmingly Black and/or Caribbean owned and controlled. Defendants' pattern of harassment has been with one goal in mind: to drive SHERWYN TOPPIN MARKETING CONSULTANTS, INC. d/b/a TEMPTATIONS TAVERN out of business and to prevent the peaceful assembly of primarily Black people and Black people from the Caribbean who wish to openly associate with each other, for the purposes of socializing, political rallies and networking. In fact, as a direct result of defendants' harassment and various closings, TEMPTATIONS TAVERN is barely able to function as a commercial entity. TEMPTATIONS TAVERN primarily Black and Caribbean patrons come less and less, and TEMPTATIONS TAVERN is simply unable to afford its overhead expenses at this point.

9. Defendants' illegal actions were undertaken pursuant to municipal defendants' customs, practices and policies.

10. Moreover, plaintiffs' rights with respect to having false arrests, false imprisonment, malicious prosecution, malicious abuse of criminal and civil process, due process, liberty interests, and the commerce clause are clearly established, and reasonable persons employed by the City of New York are aware of these rights, or have reasons to be so aware of these rights.

11. As a further proximate result of defendants' illegal acts towards plaintiffs, plaintiffs have suffered a substantial and permanent loss of revenue.

12. As a further proximate result of defendants' illegal actions towards plaintiffs, plaintiffs have suffered substantial and permanent impairment and damage to their good names and reputations.

13. As a further proximate result of defendants' illegal actions, plaintiff, EWART BURTON has suffered mental anguish and emotional injury.

14. Individual defendants' illegal actions were outrageous and were malicious, and were intended to injure plaintiffs, and were done with reckless indifference to plaintiffs' protected

rights, entitling plaintiffs to punitive damages as against all individual defendants herein.

V. CAUSES OF ACTION

FIRST CAUSE OF ACTION

15. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

16. The defendants violated the Fourth and Fourteenth Amendments of The United States Constitution by falsely arresting, by falsely searching, by falsely imprisoning, by maliciously prosecuting and by maliciously abusing criminal and quasi-criminal process against plaintiffs. These violations are made actionable through 42 U.S.C. Section 1983.

SECOND CAUSE OF ACTION

17. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

18. The defendants violated the Fourteenth Amendment of The United States Constitution by maliciously curtailing TEMPTATIONS TAVERN's rights to freely engage in commerce, and by maliciously abusing civil process against TEMPTATIONS TAVERN and EWART BURTON. These violations are made actionable through 42 U.S.C. Section 1983.

THIRD CAUSE OF ACTION

19. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

20. The defendants violated the First Amendment of the United States Constitution by curtailing TEMPTATIONS TAVERN'S and EWART BURTON'S rights of association and assembly. These violations are made actionable through 42 U.S.C. Section 1983.

FOURTH CAUSE OF ACTION

21. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

22. Defendants have undertaken a pattern of harassment, false arrests, false imprisonments, curtailment of commercial activities, malicious prosecutions, illegal searches and malicious abuses of process against plaintiffs who are Black and of Caribbean national origin and alienage.

Defendants have not typically undertaken such actions against establishments that are not Black or Caribbean owned, and individuals who are not Black or from the Caribbean. Defendants are unable to offer any rational basis for this disparity. Defendants have violated the Equal Protection Clause of the 14th Amendment. These actions are made actionable by 42 U.S.C. Section 1983; and separately by 42 U.S.C. Section 1981.

VI. PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court grant to him judgment containing the following relief:

a. Injunctive Relief;

b. An award of damages to be determined at the time of trial to compensate plaintiffs for mental anguish, humiliation, embarrassment, and emotional injury,

c. Awards of punitive damages to be determined at the time of trial as against each individual defendant;

d. Awards of reasonable attorney fees and the costs of this action and,

e. Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
March 28, 2008

Respectfully Submitted,
Law Offices of Ambrose Wotorson, P.C.

By____/s/____
Ambrose W. Wotorson (AWW-2412)
26 Court Street, Suite 1811
Brooklyn, New York 11242
718-797-4861