UNITED STATES DISTRICT COURT          NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
SHERWYN TOPPIN MARKETING      :
CONSULTANTS, INC. d/b/a TEMPTATIONS :
TAVERN, and EWART BURTON, individually, :
                          :         **MEMORANDUM & ORDER**
             Plaintiffs,     :
                          :
        - against -       :         No. 08 CV 1340 (ERK) (VVP)
                          :
CITY OF NEW YORK, and JOHN DOES I   :
through V, individually, SERGEANT MORRIS,  :
individually, CAPTAIN SARYIAN, individually, :
ERIKA DONLON, individually, SERGEANT  :
FAILLA, individually, LAU YIU TUNG,    :
individually, LORRAINE WINTERS,      :
individually, CHARLES DELGADO,      :
individually, UNDERCOVER OFFICER #0238, :
JOHN DOES I through V,          :
                          :
            Defendants.     :
-------------------------------------------------------- X

KORMAN, J.:

      Plaintiffs Sherwyn Toppin Marketing Consultants, Inc. and Ewart Burton filed this federal civil rights action against defendants City of New York, Sergeant Morris, Captain Saryian, Officer Erika Donlon, Sergeant Louis Failla, Officer Yiu Tung Lao, Detective Lorraine Winters, Officer Charles Delgado, Undercover Officer 238, and five unnamed officers. Defendants move for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

      Sherwyn Toppin Marketing Consultants, Inc. ("Sherwyn Toppin") operates Temptations Tavern, a night club, in Brooklyn, New York. Def. 56.1 Stmnt. ¶ 2, ECF No. 84. Ewart Burton

has served as the general manager of Temptations Tavern since it opened in October 2004. *Id.* ¶ 6. Burton is also the vice-president and one of two shareholders of Sherwyn Toppin. *Id.* ¶ 7.[1]

I.     *Nuisance Abatement Actions, Summonses and Arrests*

Since Temptations Tavern opened, it has been the subject of four nuisance abatement actions brought by the City of New York (the "City"). Three of these actions were dismissed pursuant to a stipulation that Temptations Tavern would not violate the New York State Alcoholic Beverage Control Law ("ABC Law"). *Id.* ¶¶ 14, 17-19. In the fourth action, Justice Richard Velasques of the New York Supreme Court found that a patron had consumed alcohol after-hours and imposed a $2,000 fine on Temptations Tavern. *Id.* ¶ 24. The proceeding was subsequently dismissed with prejudice for the City's failure to move for a default judgment. Pl. Ltr. at 3, ECF No. 100.

As Temptations Tavern's general manager, Burton has been issued twenty-five summonses and has been arrested ten times. Most of these incidents were dismissed for legal insufficiency, *see, e.g.,* Def. 56.1 Stmnt. ¶¶ 53, 55, 57, or after an adjournment contemplating dismissal, *see, e.g., id.* ¶¶ 27, 32, 71. Some of these proceedings are still pending. *See, e.g., id.* ¶ 50. Several of the summonses and arrests are detailed below where relevant.

II.    *New York State Liquor Authority Proceedings*

On December 12, 2008, Administrative Law Judge ("ALJ") Diane Ciccone of the New York State Liquor Authority ("SLA") found that Temptations Tavern had violated ABC Law § 65(1) on April 26, 2008 by permitting the sale of alcohol to a minor. *Id.* ¶ 86; Ciappetta Decl.,

---

[1] Throughout their memorandum of law, plaintiffs repeatedly assert that disputed issues of material fact preclude summary judgment. *See, e.g.,* Pl. Mem. at 43, 52, 55, ECF No. 96. Nevertheless, plaintiffs – in both their original and amended 56.1 statements – have not set forth any material facts that serve as the basis for plaintiffs' claims to which it is contended that there exists a genuine issue to be tried. *See* Local Civil Rule 56.1(b). Indeed, plaintiffs' amended response to defendants' 56.1 statement only identifies disagreements relating to legal conclusions. *See, e.g.,* Pl. Am. 56.1 Stmnt. ¶¶ 21, 27, 38, ECF No. 102.

Ex. TT at 2216-17, ECF No. 85-7. On April 1, 2009, the SLA Board sustained the charge and imposed a civil penalty of $2,500. Def. 56.1 Stmnt. ¶ 87.

On June 13, 2011, ALJ Nicholas De Cesare of the SLA found that Temptations Tavern had violated various provisions of the ABC Law on multiple dates. *Id.* ¶ 88; Ciappetta Decl., Ex. VV at 4706, ECF No. 85-8. On November 2, 2011, the SLA Board sustained the charges and canceled Temptations Tavern's liquor license. Def. 56.1 Stmnt. ¶ 89.

III.     *Plaintiffs' Prior Federal Lawsuits*

On May 11, 2007, Burton filed a lawsuit in the Southern District of New York against the City and Officer Childs, among others, raising numerous state and federal claims including false arrest, false imprisonment, abuse of process, and deprivation of due process as a result of his February 11, 2006 arrest. *Id.* ¶ 28. The action was resolved by a settlement in which the City paid Burton $35,000 in full satisfaction of all claims and Burton agreed to release defendants "from any and all liability, claims, or right of action that were or could have been alleged in the complaint in this action, arising out of the events alleged in the complaint in this action." *Id.* ¶ 29.

On October 22, 2007, Burton filed a lawsuit in the Southern District of New York against the City and Detective Morgan, among others, raising numerous state and federal claims, including false arrest, false imprisonment, abuse of process, and deprivation of due process as a result of his July 22, 2006 arrest. *Id.* ¶ 33. The action was resolved by a settlement in which the City paid Burton $15,000 in full satisfaction of all claims and Burton agreed to release defendants "from any and all liability, claims, or right of action that were or could have been alleged in the complaint in this action, arising out of the events alleged in the complaint in this action." *Id.* ¶ 34.

On August 16, 2011, plaintiffs filed a lawsuit in this district against the City, two agency attorneys in the Civil Enforcement Unit of the NYPD's Legal Bureau, an attorney in the New York City Law Department (collectively, "City defendants"), and a staff attorney for the SLA. In that action, plaintiffs alleged violations of 42 U.S.C. §§ 1983 and 1985, including malicious prosecution and abuse of process. On September 25, 2012, Judge Brodie granted the City defendants' motion for summary judgment and the SLA defendant's motion to dismiss. *Sherwyn Toppin Mktg. Consultants, Inc. v. Gluck*, No. 11-CV-3951 (MKB), 2012 WL 4364490, at *9 (E.D.N.Y. Sept. 25, 2012). No notice of appeal was filed.

## PROCEDURAL HISTORY

Plaintiffs filed a complaint, which they later amended, that raises the following claims pursuant to 42 U.S.C. §§ 1981 and 1983: (1) violation of "the Fourth and Fourteenth Amendments . . . by falsely arresting, by falsely searching, by falsely imprisoning, by maliciously prosecuting and by maliciously abusing criminal and quasi-criminal process against plaintiffs," Am. Compl. ¶ 16, ECF No. 60, and (2) violation of "the Equal Protection Clause of the [Fourteenth] Amendment" through "a pattern of harassment, false arrests, false imprisonments, curtailment of commercial activities, malicious prosecutions, illegal searches and malicious abuses of process against all plaintiffs who are Black and of Caribbean national origin and alienage, or are Black owned and/or Caribbean-owned," *id.* ¶ 18. On April 30, 2012, defendants filed this motion for summary judgment.

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. And a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff[s'] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[s]." *Id.* at 252.

"The burden of demonstrating that no material fact exists lies with the moving party." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (per curiam) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And, in ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed," *Anderson*, 477 U.S. at 255, and "[a]ll ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam) (citing *Anderson*, 477 U.S. at 255).

I.     *Claims Barred by Settlement Agreements*

This action is one in a series of four lawsuits brought in the Southern and Eastern Districts of New York against the City and an array of employees thereof, including law

enforcement officers and attorneys. The first two actions, filed by Burton (and others) in May and October 2007, raised numerous claims arising from his arrests on February 11, 2006 and July 22, 2006, respectively. Def. 56.1 Stmnt. ¶¶ 28, 33. These actions, discussed above, were settled by agreements entered as stipulations of dismissal with prejudice. Ciappetta Decl., Ex. O at 3537, ECF No. 85-6, Ex. S at 3543, ECF No. 85-6.

In this action, plaintiffs' complaint includes claims arising from Burton's arrest on February 11, 2006. *See* Am. Compl. ¶ 7d. Defendants argue that any claims that were or could have been raised in the prior actions regarding this arrest are precluded the terms of the settlement agreement in the May 2007 action. Def. Mem. at 5, ECF No. 83. Plaintiffs do not respond to this argument in their memorandum of law. Indeed, the claims raised by plaintiffs based on Burton's February 11, 2006 arrest were previously discharged in the settlement of the May 2007 action or could have been raised in that action. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286-87 (2d Cir. 2002) (holding that settlement agreements entered as stipulations of dismissal with prejudice preclude all claims that could have been brought at the time of the settlement); *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012).[2]

II.     *Claims Pursuant to 42 U.S.C. § 1981: Alleged Equal Protection Violations*

Plaintiffs allege, pursuant to § 1981, that defendants violated "the Equal Protection Clause of the [Fourteenth] Amendment" through "a pattern of harassment, false arrests, false imprisonments, curtailment of commercial activities, malicious prosecutions, illegal searches and malicious abuses of process against all plaintiffs who are Black and of Caribbean national origin and alienage, or are Black owned and/or Caribbean-owned." Am. Compl. ¶ 18. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right

---

[2] Although defendants also assert that Burton has raised claims regarding Burton's July 22, 2006 arrest in this action, *see* Def. Mem. at 5, ECF No. 83, there is no mention of Burton's arrest on July 22, 2006 in the amended complaint, plaintiffs' amended 56.1 statement or in plaintiffs' memorandum of law.

in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Defendants move for summary judgment on plaintiffs' § 1981 claims on the basis that the amended complaint fails to identify which of the statutorily enumerated activities the alleged discrimination concerns and that plaintiffs have not established that defendants acted with discriminatory intent. Def. Mem. at 11-12.

To establish a § 1981 claim, plaintiffs must show: (1) that they are members of a racial minority, (2) an intent to discriminate on the basis of race by the defendants, and (3) that the discrimination concerned one or more of the activities enumerated in § 1981. *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (citing *Brown v. City of Oneonta*, 195 F.3d 111, 121 (2d Cir. 1999)); *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 131 (E.D.N.Y. 2010). "[A]n essential element to [this] cause of action is a requirement that the alleged discrimination took place because of the individual's race." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993). Indeed, "[n]aked assertions by a plaintiff that race was a motivating factor-without a fact specific allegation of a causal link between a defendant's conduct and the plaintiff's race-are too conclusory to allege a § 1981 violation." *Hargett v. N.Y.C. Transit Auth.*, 640 F. Supp. 2d 450, 473 (S.D.N.Y. 2009) (citation omitted), *aff'd sub nom.*, *Hargett v. Metro. Transp. Auth.*, 381 F. App'x 12 (2d Cir. 2010).

Here, the first element, that plaintiffs are racial minorities, is not disputed. *See* Def. Mem. at 11 n.4. The second element requires plaintiffs to establish that defendants' conduct was undertaken with intent to discriminate on the basis of race. In their memorandum of law,

plaintiffs advance two arguments on this point. First, the plaintiffs argue that Sergeant Failla's deposition testimony and memo book demonstrates that plaintiffs "have been subjected to actions which similarly-situated non-black and non-Caribbean-operated establishments have not been subjected to." Pl. Mem. at 40, ECF No. 96 (citing Wotorson Aff., Ex. 27, ECF No. 94-2, Ex. 33, ECF No. 95).[3] Although plaintiffs' counsel posed many questions to Sergeant Failla regarding the race or national origin of the *patrons* of Temptations Tavern and several other clubs throughout Brooklyn and Staten Island, *see, e.g.*, Wotorson Aff., Ex. 27 at 18, 25-27, 47, 51, 53, he posed no questions to Sergeant Failla regarding the race or national origin of the *owners* or *operators* of any club, including Temptations Tavern. Moreover, it is evident from Sergeant Failla's testimony that he was often unaware of the race or national origin of the patrons of the clubs he patrolled. *See, e.g.*, *id.*, Ex. 27 at 18-20, 23-25, 27-30.

Second, plaintiffs argue that defendants' intent to discriminate on the basis of race is established because "defendants have not produced any evidence that any non-black and non-Caribbean establishments have been subjected to the same level of 'enforcement' as plaintiffs and similarly-situated Black and Caribbean-operated establishments have." Pl. Mem. at 40-41. The Second Circuit recently explained that, in disparate treatment cases brought pursuant to § 1981, "'[a] plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the [defendant] to articulate a legitimate, nondiscriminatory reason for its . . . action.'" *Garcia v. Hartford Police Dep't*, --- F.3d ----, 2013 WL 309981, at *5 (2d Cir. 2013) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003)). "When the defendant offers a legitimate, nondiscriminatory reason for the adverse . . . action, the burden is on the plaintiff to

---

[3] Exhibits 27 and 33 have a combined length of 108 pages. Plaintiffs provide no citations to the specific testimony or documents relevant to this point. *See* Pl. Mem. at 40.

point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (citing *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001)).

Here, defendants explain that "the NYPD's enforcement action against Temptations Tavern was undertaken for legitimate law enforcement purposes, namely, to investigate and deter the establishment from repeatedly disobeying the ABC Laws." Def. Mem. at 10. Indeed, there have been findings by at least two administrative law judges, two justices of the New York Supreme Court, and the SLA that support defendants' stated justification. *See*, *e.g.*, Def. 56.1 Stmnt. ¶¶ 21, 24, 86-89. Moreover, police officers have testified on several occasions regarding violations they observed inside Temptations Tavern. *See*, *e.g.*, *id.* ¶¶ 90-93. Thus, the burden is on plaintiffs to point to evidence that reasonably supports a finding of prohibited discrimination. This they have failed to do.

III. *Claims Pursuant to 42 U.S.C. § 1983*

Plaintiffs allege, pursuant to § 1983, that "defendants violated the Fourth and Fourteenth Amendments . . . by falsely arresting, by falsely searching, by falsely imprisoning, by maliciously prosecuting and by maliciously abusing criminal and quasi-criminal process against plaintiffs." Am. Compl. ¶ 16. Plaintiffs further allege, also pursuant to § 1983, that defendants "violated the Equal Protection Clause of the [Fourteenth] Amendment" through "a pattern of harassment, false arrests, false imprisonments, curtailment of commercial activities, malicious prosecutions, illegal searches and malicious abuses of process against all plaintiffs who are Black and of Caribbean national origin and alienage, or are Black owned and/or Caribbean-owned." *Id.* ¶ 18.

*A.     Claims Based on Conduct Prior to April 3, 2005*

Defendants argue that claims arising from one of the incidents on which plaintiffs rely in their complaint, Officer Kee's issuance of a summons to Burton for consumption of alcohol after hours on March 27, 2005, Am. Compl. ¶ 7c; Def. 56.1 Stmnt. ¶ 54, are barred by the statute of limitation. Def. Mem. at 4. "For Section 1983 actions in New York, the statute of limitations is three years." *Volpe v. Nassau Cnty.*, --- F. Supp. 2d ----, 2013 WL 28561, at *12 (E.D.N.Y. 2013) (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). "The limitations period begins to run, or accrue, 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id.* (quoting *Pearl v. City of Long Beach,* 296 F.3d 76, 90 (2d Cir. 2002)). Plaintiffs filed this action on April 3, 2008. *See* Compl.; Def. 56.1 Stmnt. ¶ 1. Thus, plaintiffs' § 1983 claims arising from defendants' conduct prior to April 3, 2005 – three years prior to the filing of this action – are time-barred. [4]

*B.     Monell Claims Against the City of New York*

Plaintiffs argue that the City violated "the Fourth and Fourteenth Amendments . . . by falsely arresting, by falsely searching, by falsely imprisoning, by maliciously prosecuting and by maliciously abusing criminal and quasi-criminal process against plaintiffs." Am. Compl. ¶ 16. The City, as a municipal entity, may only be held liable under § 1983 when the alleged unlawful action was implemented or executed pursuant to a governmental policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Reynolds v. Guiliani*, 506 F.3d 183, 190 (2d Cir. 2007). The City may not be held liable under § 1983 on a theory of vicarious liability. *See Monell*, 436 U.S. at 691. Claims against municipalities under § 1983 are not subject to a heightened pleading standard. *See Leatherman v. Tarrant Cnty. Narcotics*

---

[4] Although defendants assert that plaintiffs have also raised claims regarding the summons issued by Detective Yu on January 15, 2005, *see* Def. Mem. at 4, there is no mention of that summons in the amended complaint, plaintiffs' amended 56.1 statement, or in plaintiffs' memorandum of law.

*Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Nevertheless, such claims must meet the requirements of Rule 8 of the Federal Rules of Civil Procedure and satisfy the plausibility standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Plair v. City of N.Y.*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). Moreover, "boilerplate allegations of unconstitutional policies and practices" are insufficient to survive a motion to dismiss for failure to state a claim. *Id.*

Here, the complaint lacks sufficient factual details concerning *Monell* liability and contains mere conclusory statements regarding the City's alleged unconstitutional policies and practices. In this regard, the amended complaint includes only two brief allegations. First, plaintiffs allege that the "process of setting up illegal roadblocks as a form of harassment is a specific practice and policy of the New York City Police Department and has been utilized on numerous occasions against similarly situated establishments in Brooklyn." Am. Compl. ¶ 7f. No evidence is cited in support of this statement in the amended complaint and the "illegal roadblocks" are not mentioned in plaintiffs' memorandum of law in the discussion of their claims against the City. Moreover, it is not clear which cause of action the alleged "illegal roadblocks . . . practice and policy" would support, even if evidence of such a practice and policy had been presented.

Second, plaintiffs allege that "[d]efendants' illegal actions were undertaken pursuant to municipal defendants' customs, practices and policies." Am. Compl. ¶ 9. This allegation is insufficient to state a cause of action against the City. *See J.E. ex. Rel. Edwards v. Jericho Union Free Sch. Dist.*, --- F. Supp. 2d ----, 2012 WL 5817281, at *11 (E.D.N.Y. 2012); *Plair*, 789 F. Supp. 2d at 469 ("[T]he mere assertion . . . that a municipality has such a custom is

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

C.      *False Arrest Claims*

Plaintiffs allege "defendants violated the Fourth and Fourteenth Amendments . . . by falsely arresting [and] falsely imprisoning . . . plaintiffs." Am. Compl. ¶ 16. "In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context." *Genovese v. Town of Southampton*, --- F. Supp. 2d ----, 2013 WL 420105, at *7 (E.D.N.Y. 2013) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). To prevail on such a claim under § 1983, a plaintiff must prove: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest to the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. State of N.Y.,* 37 N.Y.2d 451, 456-57 (1975); *see also Anilao v. Spota*, --- F. Supp. 2d ----, 2013 WL 285394, at *14 (E.D.N.Y. 2013).

Probable cause to arrest "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also Paulin v. Figlia*, --- F. Supp. 2d ----, 2013 WL 120167, at *3 (S.D.N.Y. 2013). A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). "The validity of an arrest does not depend upon a finding that the arrested person is guilty." *Milfort v. Prevete*, --- F. Supp. 2d ----, 2013 WL 519041, at *4 (E.D.N.Y. 2013) (citing *Pierson v. Ray,* 386 U.S. 547, 555 (1967)). Indeed, a probable cause determination "turns on an objective assessment

of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470 (1985) (internal citation omitted).

Defendants argue that plaintiffs' claims against the individual defendants fail because plaintiffs have "not named as a defendant, with the possible exception of Sergeant Failla, any individuals who were even remotely involved with [Burton's] arrests." Def. Rep. Mem. at 16. Plaintiffs do not respond to this argument, but they do argue that they have "adequately made out claims for false arrests" against the City. *See* Pl. Mem. at 55-57. The claim against the City was discussed above.

On March 5, 2011, Burton was arrested inside Temptations Tavern. Def. 56.1 Stmnt. ¶ 49. Undercover Detective 155, not a defendant in this action, described this incident in an affidavit:

> At approximately 4:45 a.m. I observed a female working as a bartender with the subject premises serve an alcoholic beverage to a male patron in exchange for United States currency.

> At approximately 5:19 a.m. I purchased an alcoholic beverage from the same female bartender in exchange for United States currency.

> At approximately 6:15 a.m. I observed a second female bartender serve an alcoholic beverage to a male patron in exchange for United States currency.

> At approximately 6:20 a.m. I purchased an alcoholic beverage from the second female bartender.

> ***

> At approximately 6:30 a.m. [undercover officer] # C0224 and I notified the field team of what had transpired via a mobile device and they entered the subject premises.

Ciappetta Decl., Ex. E at 2603-04; *see also* Def. 56.1 Stmnt. ¶ 92. Officer Choi, also not a defendant in this action, was a member of the field team and the arresting officer on that date. He described this incident in an affidavit:

> [A]t approximately 6:30 a.m., the [undercover officers] called the field team for assistance. The [undercover officers] informed me that they had purchased alcoholic beverages from two (2) female bartenders working at the subject premises; they had also observed other patrons purchasing and consuming alcoholic beverages from those bartenders. When the field team entered the subject premises, employees of the subject premises, including one of the bartenders who had sold alcoholic beverages to the [undercover officers], fled to an office within the subject premises and locked the door. The manager of the subject premises [Burton] refused to unlock this door, which resulted in the field team not being able to apprehend those employees. The manager also refused to permit an inspection of the subject premises.

Ciappetta Decl., Ex. E at 265. Burton was charged with obstruction of governmental administration in the second degree, after-hours sale of an alcoholic beverage, an off-hour/day sales violation, failure to allow inspection, and violation of the ABC Law, Ciappetta Decl., Ex. AA at 3338. These charges remain pending. Def. 56.1 Stmnt. ¶ 50.

Although plaintiffs' amended 56.1 statement does not allege any facts relating to this incident, plaintiffs' memorandum of law suggests that Sergeant Failla was also present at Temptations Tavern at the time of Burton's arrest, *see* Pl. Mem. at 21-24, and asserts that Sergeant Failla "directed on March [5], 2011, that [Burton] be arrested and handcuffed. As well, [Sergeant] Failla openly stated his wish and desire to close Temptations [Tavern] down permanently," *id.* at 61. In his affidavit regarding this incident, Burton alleges that Sergeant Failla bragged to "patrons that he was going to 'close Temptations permanently' because 'he could,'" but he does not dispute the conduct on which the arrest was predicated. *See* Wotorson Aff., Ex. 26 at 10. Indeed, the only contradicting evidence presented by plaintiffs is Temptations Tavern bartender Whitney Perkins's claim that on March 5, 2011, "[t]he bar closed and we stopped selling alcohol and any other type of beverage promptly at 4:00 a.m." Wotorson Aff., Ex. 2y at 2054.

Viewed in the light most favorable to plaintiffs, Perkins's statement calls into question the existence of probable cause for Burton's arrest for only three of the five charges (i.e., after-hours sale of an alcoholic beverage, an off-hour/day sales violation, and violation of the ABC Law). Nevertheless, plaintiffs have not presented any evidence to contradict Officer Choi's account of Burton's conduct which led to his arrest for obstruction of governmental administration in the second degree and failure to allow inspection. In the situation described by Officer Choi, it is clear that probable cause existed for Burton's arrest for those two crimes based on his observation of Burton "refus[ing] to unlock [a] door, which resulted in the field team not being able to apprehend" several suspects and "also refus[ing] to permit an inspection of the subject premises." *See* Ciappetta Decl., Ex. E at 265; *see also United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir. 1999) ("[W]e judge the reasonableness of an officer's actions based on the objective circumstances surrounding her actions and not on her subjective intent." (citing *Whren v. United States*, 417 U.S. 806, 814 (1996))).

D.    *False Search Claims*

Plaintiffs allege "defendants violated the Fourth and Fourteenth Amendments . . . by falsely searching . . . plaintiffs." Am. Compl. ¶ 16. Defendants argue that the amended complaint fails to state a claim on this point. Def. Mem. at 20. The only "searches" referenced in plaintiffs' statement of facts are purported searches by police officers of patrons nearby Temptations Tavern. *See*, *e.g.*, Pl. Mem. at 5, 31. Moreover, plaintiffs neither discuss their "false search" claims nor respond to defendants' argument in their memorandum of law. *See Liang v. Cafe Spice SB, Inc.*, --- F. Supp. 2d ----, 2012 WL 5988766, at *22 n.27 (E.D.N.Y. 2012) ("[T]he fact that plaintiff did not oppose defendants' motion for summary judgment on [this] claim . . . is also adequate grounds for granting summary judgment in defendants' favor on

this claim."); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

E.     *Malicious Prosecution Claims*

Plaintiffs allege "defendants violated the Fourth and Fourteenth Amendments . . . by maliciously prosecuting . . . plaintiffs." Am. Compl. ¶ 16. To succeed on a claim for malicious prosecution, plaintiffs must show that (1) a prosecution was initiated against them, (2) it was brought with malice but without probable cause to believe that it could succeed, and (3) the prosecution terminated in favor of the accused. *Boyd v. City of N.Y.,* 336 F.3d 72, 76 (2d Cir. 2003); *see also Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). In addition, because a malicious prosecution claim is premised on a violation of Fourth Amendment rights, the plaintiffs must show "some deprivation of liberty consistent with the concept of 'seizure.'" *Singer,* 63 F.3d at 116; *Dellutri v. Vill. of Elmsford*, --- F. Supp. 2d ----, 2012 WL 4473268, at *12 (S.D.N.Y. 2012). Plaintiffs' claims for malicious prosecution presumably arise from the nuisance abatement proceedings, summonses and arrests detailed above. Each type of action will be discussed separately.

1.     *Nuisance Abatement Proceedings*

Defendants argue that plaintiffs cannot establish their malicious prosecution claims because the four nuisance abatement proceedings against Temptations Tavern that post-date April 3, 2005 did not terminate in plaintiffs' favor. Def. Mem. at 13-14. Indeed, the proceedings initiated on May 13, 2005, May 3, 2006 and October 9, 2007 were all resolved by stipulations in which Temptations Tavern agreed to comply with specific provisions of the ABC Law. *See* Def. 56.1 Stmnt. ¶¶ 14, 17-19. Civil actions that end in stipulations, such as these three proceedings,

cannot serve as the basis for a malicious prosecution claim. *See Colina v. One E. River Place Realty Co., LLC*, No. 99-CV-5173 (DC), 2000 WL 1171126, at *3 (S.D.N.Y. Aug. 17, 2000) ("When the underlying litigation is discharged by settlement or agreement of the parties, it does not give rise to an action for malicious prosecution.").

The fourth proceeding was initiated on March 17, 2011. Def. 56.1 Stmnt. ¶ 22; Ciappetta Decl., Ex. E at 2554. On June 15, 2011, Justice Richard Velasques of the New York Supreme Court issued a decision that denied the City's motion for injunctive relief and expressed concern regarding the decision to prosecute an entity without first spending more time investigating the alleged violations. Def. 56.1 Stmnt. ¶ 23; Ciappetta Decl., Ex. K at 1528. Nevertheless, Justice Velasques's decision included a finding that a patron had consumed alcohol after-hours and imposed a $2,000 fine on Temptations Tavern. Def. 56.1 Stmnt. ¶ 24. Because Justice Velasques found that Temptations Tavern violated a provision of the ABC Law and imposed a fine upon Temptations Tavern, plaintiffs cannot establish that the City lacked probable cause to initiate the proceeding. *See Engel v. CBS, Inc.*, 182 F.3d 124, 129 (2d Cir. 1999) ("[M]alicious prosecution claims are not encouraged, and thus, without a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case [should] be dismissed.").[5]

### 2. Summonses

As described in defendants' 56.1 statement, Burton has been issued twenty-three summonses since April 3, 2005. Defendants argue that the nineteen summonses that were dismissed for legal insufficiency or adjourned in contemplation of dismissal cannot serve as the basis for a malicious prosecution claim. Def. Mem. at 15-16. Indeed, the Second Circuit has

---

[5] In her memorandum and order of September 25, 2012, Judge Brodie held that this nuisance abatement proceeding could not serve as the predicate for a malicious prosecution claim because it had not yet terminated. *Gluck*, 2012 WL 4364490, at *7-*8. Because the action was subsequently dismissed, Pl. Ltr. at 3, Judge Brodie's holding is not dispositive here.

held that adjournments in contemplation of dismissal and dismissals for failure to allege sufficient facts to support the charge are "not sufficiently favorable to the accused to be indicative of innocence." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997); *see also Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001) ("Because an adjournment in contemplation of dismissal is not considered to be a favorable termination, [a plaintiff] cannot sustain his malicious prosecution claim based on [that] criminal proceeding."). Thus, the nineteen summonses issued on the following eleven dates did not terminate in the plaintiffs' favor: March 25, 2006, April 29, 2006, January 26, 2007, March 10, 2007, June 10, 2007, July 28, 2007, September 23, 2007, October 10, 2010, November 5, 2010, January 22, 2010 and February 18, 2011.

Of the four summonses that arguably terminated in plaintiffs' favor, three of them – those issued on July 22, 2006, February 25, 2007, and February 12, 2011 – are not raised in the amended complaint, plaintiffs' amended 56.1 statement, or in plaintiffs' memorandum of law. The remaining summons, issued on February 23, 2007, was issued by Officer Lagano to Burton for employing an unlicensed security guard. Def. 56.1 Stmnt. ¶ 64. The summons was later dismissed on September 30, 2011, for reasons not stated. *Id.* ¶ 65; Ciappetta Decl., Ex. II at 4336, ECF No. 85-6. The amended complaint, plaintiffs' memorandum of law and Burton's affidavit allege that this summons was dismissed because plaintiffs' "security guards had valid security licenses at that time." Am. Compl. ¶ 7q; Pl. Mem. at 8; Wotorson Aff., Ex. 26 at 6, ECF No. 96-1. Nevertheless, the Second Circuit has held "'that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure.'" *Swartz v. Insogna*, --- F.3d ----, 2013 WL 28364, at *6 (2d Cir. 2013) (quoting *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010)). Although Judge Newman, writing for the panel in *Swartz*, noted that there is some authority for the proposition

that multiple appearances resulting from a summons may constitute a Fourth Amendment seizure, *see id.*, plaintiffs do not allege that more than one appearance or any other restrictions resulted from the summons issued on February 23, 2007.

3.    *Arrests*

As stated in defendants' 56.1 statement, Burton has been arrested on ten occasions since April 3, 2005.  As discussed above, the claims relating to the arrests that occurred on February 11, 2006 and July 22, 2006 are barred by settlements in prior federal civil rights actions by Burton.  Defendants argue that six of the arrests cannot serve as the basis for a malicious prosecution claim because they were dismissed subsequent to an adjournment in contemplation of dismissal agreed to by Burton.  Pl. Mem. at 17.  Indeed, the Second Circuit has held that "such a termination extinguishes a malicious prosecution claim."  *Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004) (citing *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 197 (2000)).  Thus, the arrests that occurred on the following six dates cannot be the basis for a malicious prosecution claim: March 10, 2007, July 28, 2007, January 6, 2008, March 2, 2008, April 17, 2010, and November 1, 2010.  Moreover, the case initiated by Burton's arrest on March 5, 2011 is still pending, Def. Mem. at 17 n.6, and thus has not terminated in plaintiffs' favor.  The case initiated by the remaining arrest, which took place on September 9, 2006, was dismissed and sealed on July 18, 2008 for reasons not stated.  Def. 56.1 Stmnt. ¶¶ 35-36; Ciappetta Decl., Ex. T at 102.  Nevertheless, that arrest is not raised in the amended complaint, plaintiffs' amended 56.1 statement, or in plaintiffs' memorandum of law.

F.    *Abuse of Process Claims*

Plaintiffs allege "defendants violated the Fourth and Fourteenth Amendments . . . by maliciously abusing criminal and quasi-criminal process against plaintiffs."  Am. Compl. ¶ 16.

To succeed on a claim for abuse of process, a plaintiff must show that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003).

1.    *Nuisance Abatement Proceedings*

Defendants argue that plaintiffs cannot establish their abuse of process claims arising from nuisance abatement proceedings because such proceedings are civil, not criminal, processes. Def. Mem. at 18. Indeed, Judge Brodie held that abuse of process claims based on the very nuisance abatement proceedings at issue in this action "must be dismissed" because nuisance abatement proceedings are civil processes. *Gluck*, 2012 WL 4364490, at *8; *see also Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) ("[S]ection 1983 liability . . . may not be predicated on a claim of malicious abuse of . . . *civil* process." (quotation marks and citation omitted)). Moreover, plaintiffs are collaterally estopped. *See Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012) ("Collateral estoppel . . . prevents relitigation in a subsequent action of 'an issue of law or face actually litigated and decided by a court of competent jurisdiction in a prior action.'" (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).

2.    *Summonses and Arrests*

In their attempt to establish the third element of their abuse of process claims, plaintiffs argue that "shutting down Temptations Tavern" was defendants' collateral objective and is outside the legitimate ends of summonses and arrests. Pl. Mem. at 55. Even if "shutting Temptations Tavern down by any means," *id.*, is a collateral objective for the purposes of

plaintiffs' abuse of process claim, *see Hoffman v. Town of Southampton*, --- F. Supp. 2d ----, 2012 WL 4465779, at *10 (E.D.N.Y. 2012), plaintiffs' memorandum of law includes no citations to the evidentiary record to support their assertion that "the record is replete with instances of NYPD officials telling or implying to plaintiffs, that they would close down Temptations Tavern permanently by any means at their disposal," *id*. at 54. *See Blair v. City of N.Y.*, No. 03-CV-1485 (SLT)(CLP), 2009 WL 959547, at *10 (E.D.N.Y. Mar. 31, 2009) (granting motion to dismiss abuse of process claim where plaintiff failed to point to any evidence that "g[a]ve rise to an inference of an illegitimate collateral objective").

G.      *Equal Protection Claims Pursuant to § 1983*

Plaintiffs allege, pursuant to § 1983, that defendants "violated the Equal Protection Clause of the [Fourteenth] Amendment" through "a pattern of harassment, false arrests, false imprisonments, curtailment of commercial activities, malicious prosecutions, illegal searches and malicious abuses of process against all plaintiffs who are Black and of Caribbean national origin and alienage, or are Black owned and/or Caribbean-owned." Am. Compl. ¶ 18. Plaintiffs further allege that "[d]efendants have not typically undertaken such actions against establishments that are not Black or Caribbean owned, and individuals who are not Black or from the Caribbean." *Id*. Defendants argue that the evidence submitted by plaintiffs is inadequate to prove their equal protection claims under § 1983.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish an equal protection violation on a claim of selective enforcement under § 1983, the plaintiff must prove that "(1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Brown v. City of Syracuse,* 673 F.3d 141, 151-52 (2d Cir. 2012) (internal quotation marks and citations omitted). Under the first prong, plaintiffs attempting to prove selective enforcement "on the basis of . . . race . . . must 'show that similarly situated individuals of a different race were not [subjected to the offensive conduct].'" *Brown v. City of Oneonta*, 221 F.3d 329, 338 (2d Cir. 2000) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002); *see also Cine Sk8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007). Under the second prong, plaintiffs must demonstrate that "the disparate treatment was caused by the impermissible motivation. They cannot merely rest on a showing of disparate treatment." *Bizarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005).

In their memorandum of law, plaintiffs advance two arguments on this point. First, the plaintiffs argue that Sergeant Failla's deposition testimony and memo book demonstrates that plaintiffs "have been subjected to actions which similarly-situated non-black and non-Caribbean-operated establishments have not been subjected to." Pl. Mem. at 40 (citing Wotorson Aff., Exs. 27, 33). As discussed above with reference to plaintiffs' § 1981 claims, the cited deposition contains no testimony regarding the race or national origin of the *owners* or *operators* of any club, including Temptations Tavern.

Second, plaintiffs point to three similar cases filed in the Eastern District against the City over the past decade in which plaintiffs' counsel represented three black and Caribbean-owned businesses and several individuals who were treated similarly to plaintiffs. *See* Pl. Mem. at 41-42. All three cases were disposed of by settlement after discovery was completed. *Id.* Passing over the fact that an affidavit or other competent evidence was not submitted to support this

claim, it fails because plaintiffs have failed to come forward with evidence that similar businesses owned by non-minority proprietors who engaged in the same conduct were not prosecuted.

## CONCLUSION

The defendants' motion for summary judgment is granted.


SO ORDERED.

Brooklyn, New York
February 25, 2013

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge